## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS/ST. JOHN

UNITED STATES OF AMERICA          :
                                    :

                                    :
          v.                          :       CRIMINAL NO. 2002-158
                                    :

                                    :
RIEL CHARLESWELL              :

## MEMORANDUM

Giles, J.                                          January 11, 2008

### I. Introduction

      This matter comes before the court on remand from the U.S. Circuit Court of Appeals for the Third Circuit. Defendant Riel Charleswell appealed from his November 19, 2004 conviction for reentering the United States without permission, after having been previously deported, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).[1] At issue on appeal was whether the trial court had improperly rejected Charleswell's defense, a collateral challenge to the validity of (1) the original 1991 Deportation order and (2) the 2001 Reinstatement order. The Third Circuit held that

---

[1] § 1326(a) provides, in relevant part:
Subject to subsection (b) of this section, any alien who -- (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States[] . . . with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under the chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

§ 1326(b)(2) provides:
Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection -- . . . (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both[.]

Charleswell could not collaterally challenge the original 1991 Deportation order because he had

not been deprived of judicial review, in that he had had an opportunity to appeal that order but

did not do so.[2]  United States v. Charleswell, 456 F.3d 347, 352-53 (3d Cir. 2006).

The Third Circuit, however, held that Charleswell was denied the opportunity for judicial

review of the 2001 Reinstatement order and that that reinstatement proceeding, if prejudicial, was

fundamentally unfair. Id. at 349, 360-61, 363.  It vacated Charleswell's conviction and remanded

the matter to determine whether Charleswell could demonstrate prejudice. Id. at 349, 363.

After hearing, this court concludes that Charleswell was not prejudiced by the 2001

Reinstatement proceeding and that the November 19, 2004 criminal conviction must be

reinstated for the reasons that follow.

The court first examines the Third Circuit's standard for collateral attack of a deportation

proceeding and for determining prejudice as set forth in Charleswell, 456 F.3d 347.  Because

Charleswell solely contends that he was prejudiced because he was denied the opportunity to

argue that the new reinstatement provision of IIRIRA, § 241(a)(5), 8 U.S.C. § 1231(a)(5), was

impermissibly retroactively applied to him, the court will only discuss retroactivity and the recent

---

[2]  In the hearing upon remand, Charleswell continued to challenge the 1991 Deportation order and made claims in addition to those addressed by the Third Circuit, Charleswell, 456 F.3d at 353. (See, e.g., Mots. Hr'g Tr. 17-20, 25, 28-29, 31, 39, 43-44, 45, 55-56, 59-67, 69, 85, 94-96, 108-14, May 9, 2007.) He testified that he never received a written order indicating that he would be deported to the British Virgin Islands. (Mots. Hr'g Tr. 28:15-29:03, 43:21-23, 60-61, 94-96, 114:12-15); cf. Charleswell, 456 F.3d at 353. He also testified that upon being deported to the British Virgin Islands for the first time, he was not permitted to enter and was told to go to the U.S. Virgin Islands. (Mots. Hr'g Tr. 24:3-13, 32:4-13, 69:21-24, 70:1-22, 81:25-82:1, 93:5-20); cf. Charleswell, 456 F.3d at 353. The submission of all evidence and argument pertaining to the 1991 Deportation should have been completed prior to the Third Circuit's review of the issue. The Third Circuit has determinatively decided this issue and, in finding that Charleswell may not collaterally challenge the 1991 Deportation order, foreclosed the issue from the district court's review. See Charleswell, 456 F.3d at 353. Therefore, as directed, this court may only consider whether Charleswell's 2001 Reinstatement proceeding was fundamentally unfair.

controlling U.S. Supreme Court decision on the issue, <u>Fernandez-Vargas v. Gonzales</u>, 126 S. Ct. 2422 (2006). Interpreting a narrow exception to the broadly stated rule in <u>Fernandez-Vargas</u>, this court concludes that § 241(a)(5) was not impermissibly retroactive as applied because Charleswell has failed to demonstrate that he availed himself of, or was even eligible for, the relief theoretically denied by application of § 241(a)(5). Having failed to establish impermissible retroactivity, Charleswell has failed to show that he was prejudiced by the procedural deprivation in the 2001 Reinstatement proceedings.

## II.  Factual and Procedural Background

The Third Circuit has succinctly described the background of this case as follows:

> Charleswell was born in the British Virgin Islands but became a permanent resident of the United States in 1967, when he was three years old. In 1987, Charleswell was convicted in a Maryland state court for possession with intent to distribute marijuana and, based on that conviction, the Immigration and Naturalization Service commenced deportation proceedings against him ("1991 Deportation"). At his deportation hearing, Charleswell conceded that he was deportable but sought waiver pursuant to section 212(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1182(c) (1995) (repealed by Illegal Immigrant Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, Div. C, § 304(b), 1996 U.S.C.C.A.N. (110 Stat.) 3009-597). Section 212(c) permits the Attorney General discretion to waive deportation of a removable alien who had established a continuous, lawful domicile in the United States for seven years. <u>See</u> <u>INS v. St. Cyr</u>, 533 U.S. 289, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001). It is undisputed that Charleswell had established a continuous, lawful domicile in the United States for seven years. In distressing fashion, however, the Immigration Judge [("IJ")] denied Charleswell's request for a section 212(c) waiver because he believed that the United States Virgin Islands, specifically St. Thomas, was not a territory of the United States. The IJ's mistaken belief led him to find Charleswell deportable to the British Virgin Islands. Despite the adverse finding, Charleswell did not appeal this decision and, on July 9, 1992, Charleswell was deported to the British Virgin Islands.
>
> In 1997, Charleswell was again found and arrested in Maryland. He was charged with re-entering the United States after deportation and being a felon in

possession of a firearm in violation of 8 U.S.C. § 1326. Charleswell moved to dismiss the indictment on the ground that his previous deportation was fundamentally unfair. The District Court dismissed this motion and, after a conditional plea of guilty, sentenced Charleswell to 49 months in prison. The Court of Appeals for the Fourth Circuit affirmed the District Court's judgment. See United States v. Charleswell, 173 F.3d 425 (4th Cir. 1999). On November 28, 2000, the INS issued a Notice of Intent to Reinstate Charleswell's 1991 Deportation. Pursuant to the Notice of Intent, Charleswell was deported again in 2001 ("2001 Reinstatement").

  In 2002, Charleswell was again found in the United States, this time in St. Thomas, and he was charged in the District Court for the United States Virgin Islands with re-entry after deportation in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Charleswell filed a Motion to Dismiss, arguing that the 1991 Deportation and the 2001 Reinstatement, upon which the indictment was based, were fundamentally unfair and invalid. The District Court denied this motion, finding that Charleswell was not denied judicial review of the 1991 Deportation order or the 2001 Reinstatement. The government moved to preclude Charleswell from challenging the lawfulness of his prior deportations at trial, which the District Court granted and the matter proceeded to trial. On January 26, 2004, a jury returned a guilty verdict and the District Court sentenced Charleswell to 57 months in prison.

Charleswell, 456 F.3d at 349-50 (footnote omitted). The judgment and commitment

order was entered on November 19, 2004. Charleswell timely appealed.

  On August 1, 2006, the Third Circuit vacated Charleswell's conviction and remanded for

findings on whether Charleswell can demonstrate prejudice as to the 2001 Reinstatement

proceeding. Id. at 349, 363. On May 9, 2007, this court held a hearing on the issue on remand.

The court ordered supplemental briefing on the parties' proposed findings of fact and memoranda

of law.

4

### III.  Discussion

**A.    Standard of Review**

**1.        Standard for Collateral Attack under 8 U.S.C. § 1326(d).**

The Supreme Court in <u>United States v. Mendoza-Lopez</u> held that a defendant charged

under 8 U.S.C. § 1326 for illegal reentry is entitled to challenge collaterally the fundamental

fairness of the deportation proceeding on due process grounds "where the deportation proceeding

effectively eliminates the right of the alien to obtain judicial review." 481 U.S. 828, 834-37

(1987).

In interpreting <u>Mendoza-Lopez</u>, the Third Circuit established a three-part test that a

defendant must meet to challenge collaterally a deportation order or proceeding.  <u>Charleswell,</u>

456 F.3d at 351.  "The alien must establish that (1) he exhausted any administrative remedies that

may have been available; (2) the hearing effectively eliminated the right of the alien to obtain

judicial review from that proceeding; and (3) the prior hearing was 'fundamentally unfair.'" <u>Id.</u>

(citing <u>United States v. Torres</u>, 383 F.3d 92, 98-99 (3d Cir. 2004)).

Congress codified these requirements when it enacted 8 U.S.C. § 1326(d) in 1996.

Section 1326(d) provides:

> In a criminal proceeding under this section, an alien may not challenge the validity
> of the deportation order described in subsection (a)(1) or subsection (b) of this
> section unless the alien demonstrates that -- (1) the alien exhausted any
> administrative remedies that may have been available to seek relief against the
> order; (2) the deportation proceedings at which the order was issued improperly
> deprived the alien of the opportunity for judicial review; and (3) the entry of the
> order was fundamentally unfair.

8 U.S.C. § 1326(d).  "[A]ll three [requirements] must be met before an alien will be permitted to

mount a collateral challenge to the underlying removal order." <u>Torres</u>, 383 F.3d at 99.

5

**2.    The Third Circuit's 8 U.S.C. § 1326(d) Analysis in <u>Charleswell</u>.**

With respect to the 2001 Reinstatement, the Third Circuit found that, as to the first prong

of Section 1326(d), the requirement for exhaustion of administrative remedies was met.

<u>Charleswell</u>, 456 F.3d at 354.

As to the second prong, the Third Circuit found that Charleswell was effectively denied

an opportunity to seek judicial review, given "the lack of any notice concerning his right to a

direct appeal in combination with the misleading nature of the explicit language of the

reinstatement order and the speed with which aliens are deported following a reinstatement

process." <u>Id.</u> at 354-57.

Turning to the third prong, the Third Circuit ruled that "under § 1326(d)(3), in order for a

proceeding to be 'fundamentally unfair,' the alien must both establish that some fundamental

error occurred and that as a result of that fundamental error he suffered prejudice."[3] <u>Id.</u> at 358.

The Third Circuit concluded: "[T]he INS's failure to inform Charleswell of his statutorily

prescribed right to seek an appeal of his reinstatement order, combined with the misleading

language contained in the reinstatement Notice of Intent form, is a fundamental defect of the

nature that, if prejudicial, renders the proceedings fundamentally unfair." <u>Id.</u> at 360.  The

question remanded for this court to answer is whether Charleswell "is able to show that he was

prejudiced by the procedural deprivation" with respect to the 2001 Reinstatement. <u>Id.</u> at 361.

---

[3] The Third Circuit clarified that there are at least two ways to determine fundamental
error. <u>Id.</u> at 359-60.  First, "a proceeding may be fundamentally unfair where it deprives an alien
of some substantive liberty or property right such that due process is violated." <u>Id.</u> at 359.
Second, "a proceeding may be fundamentally unfair where an agency has violated procedural
protections such that the proceeding is rendered fundamentally unfair." <u>Id.</u> at 360.

**3.      The Third Circuit's Standard for Prejudice under 8 U.S.C. § 1326(d)(3).**

"[P]rejudice requires a reasonable likelihood that the result would have been different if

the error in the deportation proceeding had not occurred." Id. at 361-62.  Thus, this court

specifically must determine "whether there is a reasonable probability that Charleswell would

have obtained relief had he not been denied the opportunity for direct judicial review of his

reinstatement order." Id. at 362.

The Third Circuit provided the court with guidance for determining this issue.  The court

may consider whether there is a reasonable probability that Charleswell would have obtained

relief had he not been denied the opportunity to contest the predicate elements leading to his

2001 Reinstatement, "specifically, that he was subject to a prior order of removal, that he was the

same alien who was previously removed, and whether he had entered illegally." Id.  The Third

Circuit, however, emphasized that the court's inquiry should not be limited to the predicate facts

underlying the reinstatement order.  Id.  The court was authorized to consider whether there is a

reasonable probability that Charleswell would have obtained relief had he not been denied the

opportunity to argue that "the new reinstatement provision, § 241(a)(5), 8 U.S.C. § 1231(a)(5),

and its corresponding regulations, 8 C.F.R. § 241.8, were impermissibly retroactive as applied to

him." Id.

If the court determines "that there is a reasonable likelihood that the result would have

been different had the error in the deportation proceeding not occurred, the reinstatement order

will have been fundamentally unfair within the meaning of § 1326(d)(3)," id. at 363, and the

court "may invalidate the criminal charges stemming" from the 2001 Reinstatement, see id. at

352.[4] If, however, the court finds that there is a reasonable likelihood that the result would not have been different had the error in the deportation proceeding not occurred, then the judgment of conviction entered November 19, 2004 must be reinstated.

**B.     Application of the Prejudice Standard and Impermissible Retroactivity Standard.**

Charleswell solely argues there is a reasonable probability that he would have obtained relief had he not been denied the opportunity to argue that the new reinstatement provision of IIRIRA, § 241(a)(5), 8 U.S.C. § 1231(a)(5), was impermissibly retroactive as applied to him.[5] (Def.'s Proposed Findings of Fact and Mem. of Law 3.) He does not argue that there is a reasonable probability that he would have obtained relief had he not been denied the opportunity to contest the predicate elements leading to his 2001 Reinstatement. Thus, the court addresses only arguments as to impermissible retroactivity.

**1.     Section 241(a)(5)**

Prior to 1997, the reinstatement provision in effect provided:

---

[4] Upon representation, Charleswell has completed his sentence for the illegal reentry conviction and is currently on immigration detainer. (Mots. Hr'g Tr. 44:14-45:5, 106-07, May 9, 2007.) If the court were to invalidate the criminal charges stemming from the 2001 Reinstatement, Charleswell's conviction as to the 1991 Deportation order still stands and he remains deportable.

[5] Charleswell does not argue that the new reinstatement provision's corresponding regulations, 8 C.F.R. § 241.8, were impermissibly retroactive as applied to him. Cf. Morales-Izquierdo v. Gonzales, 477 F.3d 691, amended on denial of reh'g, 486 F.3d 484, 497 (9th Cir. 2007) (upholding 8 C.F.R. § 241.8 as constitutional and holding that "[r]einstatement of a prior removal order--regardless of the process afforded in the underlying order--does not offend due process because reinstatement of a prior order does not change the alien's rights or remedies").

> Should the Attorney General find that any alien has unlawfully reentered the
> United States after having previously departed or been deported pursuant to an
> order of deportation, whether before or after June 27, 1952, on any ground
> described in subsection (e) . . . the previous order of deportation shall be deemed
> to be reinstated from its original date and such alien shall be deported under such
> previous order at any time subsequent to such reentry.

8 U.S.C. 1252(f) (1994 ed.) (repealed 1997).

In IIRIRA, Congress replaced this reinstatement provision with the new § 241(a)(5),

which provided:

> If the Attorney General finds that an alien has reentered the United States illegally
> after having been removed or having departed voluntarily, under an order of
> removal, the prior order of removal is reinstated from its original date and is not
> subject to being reopened or reviewed, the alien is not eligible and may not apply
> for any relief under this chapter, and the alien shall be removed under the prior
> order at any time after the reentry.

8 U.S.C. § 1231(a)(5) (1994 ed., Supp. III).  This statute was enacted on September 30, 1996, and

became effective on April 1, 1997, the "first day of the first month beginning more than 180

days" following IIRIRA's enactment.  § 309(a), 110 Stat. 3009-625 (appearing as 8 U.S.C. §

1101 note).  The 2001 Reinstatement order was made pursuant to the new § 241(a)(5).

As the Third Circuit has explained, the new reinstatement statute differs from its

predecessor in that

> (1) it applies to *all* prior removal, deportation, and exclusion orders, not just to
> certain grounds of deportation (such as criminal offenses); (2) it prohibits
> reopening or review of the prior removal order; and (3) it prohibits any
> applications for relief. . . . [U]nder the prior statute, aliens who illegally reentered
> were entitled to a new deportation proceeding before again being deported.  Under
> the new statute, all aliens who illegally reenter the United States following their
> removal or deportation have their prior deportation orders summarily reinstated
> without any opportunity to attack their underlying deportation orders or to seek
> new forms of relief from removal or deportation.

Dinnall v. Gonzales, 421 F.3d 247, 253 (3d Cir. 2005) (holding that the application of

Section 241(a)(5) to aliens who reentered the United States prior to IIRIRA's effective date has

an impermissible retroactive effect because the statute impairs certain rights those aliens

possessed prior to that time; this holding was abrogated by Fernandez-Vargas v. Gonzales, 126 S.

Ct. 2422 (2006)); see Fernandez-Vargas, 126 S. Ct. at 2426 & n.4 (describing differences

between the new and old reinstatement provisions).


2.    **The Retroactivity Analysis under Landgraf v. USI Film Products and**
      **Fernandez-Vargas v. Gonzales.**

In Fernandez-Vargas v. Gonzales, 126 S. Ct. 2422, 2425 (2006), the Supreme Court

addressed whether the new reinstatement provision, § 241(a)(5), applies to individuals, such as

Charleswell,[6] who reentered the United States before IIRIRA's effective date.  The Court held

that "the statute applies to those who entered before IIRIRA and does not retroactively affect any

right of, or impose any burden on, the continuing violator of the INA."  Id.

After being deported, Humberto Fernandez-Vargas, a Mexican citizen, in 1982 illegally

reentered the United States and remained undetected for over twenty years.  Id. at 2427.  He

started a trucking business, and fathered a U.S.-citizen child in 1989.  Id.  In 2001, he married the

mother of his child, who was also a U.S. citizen.  Id.  Through his marriage, he attempted to

adjust his status to that of legal permanent resident.  Id.  His application tipped off the

immigration authorities to his unlawful presence.  Id.  Deportation proceedings were commenced

---

[6] The court takes judicial notice of the fact that Charleswell was found in the United States on or about March 20, 1997.  (See Mots. Hr'g Tr. 32:21-23, May 9, 2007; Gov't Reply to Def.'s Proposed Findings of Fact & Mem. of Law 2.)  The new reinstatement provision became effective on April 1, 1997.  IIRIRA, § 309(a), 110 Stat. 3009-625 (appearing as 8 U.S.C. § 1101 note).

and Fernandez's 1981 deportation order was reinstated under § 241(a)(5), denying him the possibility of adjusting his status and ultimately resulting in his deportation. Id. Appealing to the Court of Appeals for the Tenth Circuit, he argued that the new § 241(a)(5) did not apply to those who reentered unlawfully before its effective date and that any such application would be impermissibly retroactive. Id. The Tenth Circuit found no impermissible retroactive effect. Id. The Court granted certiorari to resolve a circuit split on the issue. Id.

In determining whether § 241(a)(5) had an impermissible retroactive effect, the Court applied the two-part inquiry in Landgraf v. USI Film Products, 511 U.S. 244 (1994). Fernandez-Vargas, 126 S. Ct. at 2427-28. First, a court must determine if Congress has expressly provided that the statute should have retroactive effect and, if there is no express provision, apply standard rules of statutory construction "to draw a comparably firm conclusion." Id. at 2428; Landgraf, 511 U.S. at 280.

Second, if the statute is not clear as to its temporal reach, a court must determine "whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before its enactment.'" Fernandez-Vargas, 126 S. Ct. at 2428 (quoting Landgraf, 511 U.S. at 278); see Landgraf, 511 U.S. at 280 (holding that a statute has retroactive effect when its application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed"). If the answer is yes, courts must apply a presumption that the statute not be construed so as to regulate that past conduct. Fernandez-Vargas, 126 S. Ct. at 2428; Landgraf, 511 U.S. at 280; see Dinnall, 421 F.3d at 252.

11

Applying Landgraf principles, the Court first held that, although there was no express

statutory language as to temporal reach, "[c]ommon principles of statutory interpretation fail to

unsettle the apparent application of § 241(a)(5) to any reentrant present in the county, whatever

the date of return."[7] Fernandez-Vargas, 126 S. Ct. at 2430.

Turning to whether the statute had retroactive effect as applied to Fernandez-Vargas, the

Court found the application of § 241(a)(5) did not have retroactive effect for two reasons. First,

the Court found that § 241(a)(5) applied to Fernandez-Vargas not based on his reentry date, but

because "he chose to remain after the new statute became effective." Id. at 2431. The Court's

analysis turned on identifying the conduct to which the reinstatement provision applies – "the

conduct that results in reinstating the old deportation order without the former opportunities to

---

[7] Although not critical to resolution of the remand issue, the court observes that considerable debate has ensued as to what the above-quoted holding concludes regarding Congress' intent and the outcome of Landgraf's first prong analysis. Compare Gonzales v. Dep't of Homeland Sec., No. 07-35021, 2007 U.S. App. LEXIS 27576, at *16 (9th Cir. Nov. 30, 2007) ("First, [the Fernandez-Vargas Court] held that the new reinstatement provision, on its face, reached aliens who reentered the United States pre-IIRIRA. It then held that the reinstatement provision had no retroactivity effect . . . ." (citation omitted)), with de Anderson v. Gonzales, 497 F.3d 927, 936 (9th Cir. 2007) (citing Fernandez-Vargas and holding that "Congress did *not clearly indicate* that IIRIRA's repeal of suspension of deportation should operate retroactively" and turning to the second Landgraf step of whether IIRIRA has an impermissible retroactive effect as applied (emphasis added); and Rosa v. Gonzales, 490 F.3d 403, 406 (5th Cir. 2007) (construing Fernandez-Vargas's holding to be that, as to the first Landgraf step, it is *unclear* whether Congress intended § 241(a)(5) to apply retroactively, and proceeding to the second step of Landgraf (emphasis added)), and with Valdez-Sanchez v. Gonzales, 485 F.3d 1084, 1088 (10th Cir. 2007) (explaining that the Court in Fernandez-Vargas held that "Congress had *not expressly prescribed* § 241(a)(5)'s temporal reach" and then considered Landgraf's second step (emphasis added)); and Wilson v. Gonzales, 471 F.3d 111, 121 (2d Cir. 2006) (interpreting the holding in Fernandez-Vargas to be that the Supreme Court, as to the first Landgraf step, "concluded that Congress had *not expressly prescribed* the statute's temporal reach" and then "proceeded to the second step in the Landgraf analysis: considering whether the application of IIRIRA would have an impermissible retroactive effect" (emphasis added)).

12

seek [relief]."[8] Id. The Court found that the predicate action was "the conduct of remaining in the country after entry . . . ; the statute applies to stop an *indefinitely continuing violation that the alien himself could end at any time by voluntarily leaving the country.*" Id. at 2432 (emphasis added).

In identifying this conduct, the Court distinguished INS v. St. Cyr, 533 U.S. 289 (2001). In St. Cyr, the alien, Enrico St. Cyr, was a legal permanent resident who had pled guilty to an aggravated felony charge pursuant to a plea agreement during a time when the law allowed him to seek a discretionary waiver of deportation from the Attorney General. 533 U.S. at 314-15. The Court decided whether application of a new law barring such discretionary relief to a defendant who had pled guilty before its enactment had an impermissible retroactive effect. Id. at 321. The Court concluded that retroactive application of the new law was precluded because it attached a "burdensome consequence to his plea, amounting to 'a new disability, in respect to transactions or considerations already past.'" Fernandez-Vargas, 126 S. Ct. at 2431 (quoting St. Cyr, 533 U.S. at 321). The Court emphasized that St. Cyr's plea agreement involved a *quid pro quo* agreement with the Government upon which the defendant relied for the possibility of discretionary relief and, in doing so, waived constitutional rights. Id. (citing St. Cyr, 533 U.S. at 321-23).

In St. Cyr, the *quid pro quo* and plea agreement were "entirely past" and could not be undone. Fernandez-Vargas, 126 S. Ct. at 2431. In Fernandez-Vargas, however, the Court found

---

[8] Although the relief in question in Fernandez-Vargas was the opportunity for adjustment of status through marriage, the Court indicated that the same holding would apply to other forms of relief no longer available under the new reinstatement provision, such as voluntary departure, see 8 U.S.C. § 1229c, and cancellation of removal, see § 1229b(b). Fernandez-Vargas, 126 S. Ct. at 2431 n.9.

that it was Fernandez-Vargas' "choice to continue his illegal presence, after illegal reentry and after the effective date of the new law" – and "not a past act that he is helpless to undo" – that subjected him to the new law. Id.; see Atkinson v. Attorney General of the United States, 479 F.3d 222, 230-31 (3d Cir. 2007) (explaining and distinguishing Fernandez-Vargas). In addition, the Court interpreted Fernandez-Vargas' retroactivity claim to be for the "new consequences of past acts," and not one of "cancelling vested rights," because the relief denied to him by § 241(a)(5) (cancellation of removal, adjustment of status, and voluntary departure) were not "vested rights." Fernandez-Vargas, 126 S. Ct. at 2432 n.10. Such relief, regardless of its discretionary nature, "was contingent, and it was up to him to take some action that would elevate it above the level of hope." Id. Thus, unlike when St. Cyr made his *quid pro quo* agreement, Fernandez-Vargas "never availed himself of [these forms of relief] or took action that enhanced their significance to him in particular." Id.

Second, the Court found that the application of § 241(a)(5) did not have retroactive effect because "Fernandez-Vargas had an ample warning of the coming change of the law, but chose to remain until the old regime expired and § 241(a)(5) took its place." Id. at 2431. For approximately six months between the enactment and effective date of § 241(a)(5), Fernandez-Vargas failed to take timely action, such as leaving the United States and applying for lawful reentry, or marrying the mother of his child and applying to adjust his status, which would have avoided application of the new law. Id. at 2432-34 ("What Fernandez-Vargas complains of is the application of new law to continuously illegal action within his control both before and after the new law took effect."). Thus, the Court concluded that § 241(a)(5) had no retroactive effect for him. Id. at 2434.

14

3.    **Application of the <u>Fernandez-Vargas v. Gonzales</u> Retroactivity Analysis to Defendant.**

In <u>Charleswell</u>, the Third Circuit stated that although <u>Fernandez-Vargas</u> "significantly

delimited" claims that § 241(a)(5) is impermissibly retroactive when applied to aliens who

reentered before IIRIRA's effective date, the Supreme Court "did not entirely foreclose" such

claims. <u>Charleswell</u>, 456 F.3d at 362 n.19 (citing <u>Fernandez-Vargas</u>, 126 S. Ct. at 2432 n.10).

Aliens in this situation possibly are left with the narrow avenue of arguing that they, unlike

Fernandez-Vargas (but like St. Cyr), availed themselves of the relief initially available but barred

by § 241(a)(5) or took some action that enhanced the significance of this relief to them, in

particular, prior to IIRIRA's effective date, and therefore base their claims on vested rights.[9] <u>See</u>

<u>Fernandez-Vargas</u>, 126 S. Ct. at 2432 n.10; <u>Charleswell</u>, 456 F.3d at 362 n.19; <u>see</u> <u>also</u> <u>Valdez-</u>

<u>Sanchez v. Gonzales</u>, 485 F.3d 1084, 1088-90 (10th Cir. 2007) (noting the same possibility under

<u>Fernandez-Vargas</u> and finding that because the petitioner relied on pre-IIRIRA law, married a

U.S. citizen, and "applied for discretionary relief in the form of adjustment of status prior to

IIRIRA's enactment," the application of § 241(a)(5) was impermissibly retroactive when applied

to him, in that a "new disability attached to a completed transaction"); <u>Wilson v. Gonzales</u>, 471

F.3d 111, 121 (2d Cir. 2006) (interpreting <u>Fernandez-Vargas</u> to suggest "that a claim of proven

reliance on pre-existing law might have produced a different result").

It is through this door that Charleswell attempts to squeeze.  Comparing himself to St.

---

[9] The Government's argument that <u>St. Cyr</u> is irrelevant to the required analysis fails to appreciate fully the Supreme Court's reasoning in <u>Fernandez-Vargas</u>.  (<u>See</u> Gov't Reply to Def.'s Proposed Findings of Fact & Mem. of Law 2.)

Cyr and distinguishing his conduct from Fernandez-Vargas', Charleswell argues that before the enactment of IIRIRA he attempted to procure or avail himself of the relief formerly available. (Def.'s Proposed Findings of Fact & Mem. of Law 5-6.)  He thus argues that the relief denied to him by § 241(a)(5) were "vested rights," see Fernandez-Vargas, 126 S. Ct. at 2432 n.10, placing this matter within the second prong of Landgraf. (Def.'s Proposed Findings of Fact & Mem. of Law 6.)

Under Fernandez-Vargas, to demonstrate that his rights were vested, Charleswell must show that he availed himself of the relief denied to him by § 241(a)(5), i.e., cancellation of removal, adjustment of status, and voluntary departure, or "took action that enhanced their significance to him in particular." See 126 S. Ct. at 2432 n.10.  It follows that if Charleswell was not eligible to apply for relief denied to him by § 241(a)(5) prior to IIRIRA's effective date, such rights could not vest before IIRIRA's effective date. See Rosa v. Gonzales, 490 F.3d 403, 407-08 (5th Cir. 2007) (holding also that an actual application for relief, and not mere preliminary steps, was required to give rise to vested rights).

The Third Circuit has not yet had occasion to address what role, if any, an alien's mere reliance on the prior state of the law plays in the Fernandez-Vargas retroactivity analysis.  In general, the Third Circuit, heretofore, has rejected an actual reliance requirement, choosing not to focus "on the particular facts and circumstances of the party before the court," but instead, focusing a "reasonable reliance" inquiry on "the class of aliens" as a whole. Dinnall, 421 F.3d 247, 261-62 (3d Cir. 2005), abrogated in part by Fernandez-Vargas, 126 S. Ct. 2422; Ponnapula v. Ashcroft, 373 F.3d 480, 491-94 (3d Cir. 2004) (stating that Section 241(a)(5) "can be found to be impermissibly retroactive without establishing that some (or all) members of the group

16

affected by the change in law relied on the prior state of the law"); see Hem v. Maurer, 458 F.3d

1185, 1191-92, 1196, 1198-99 (10th Cir. 2007) (noting the circuit split on actual reliance versus

objective reliance, agreeing with the Third Circuit's objective reliance approach, and finding that

Fernandez-Vargas supports the objective reliance approach); but see Wilson v. Gonzales, 471

F.3d 111, 121-22 (2d Cir. 2006) (interpreting Fernandez-Vargas to require an individualized

showing of reliance on pre-existing law in determining whether an application of IIRIRA is

impermissibly retroactive); see also Carranza-de Salinas v. Gonzales, 477 F.3d 200, 209 n.11

(5th Cir. 2007) (following the Second Circuit in Wilson).

  The Third Circuit also, heretofore, has found that reliance on the prior state of the law is

only one consideration, and not "the *sine qua non*," "in assessing whether a statute attaches new

legal consequences to past events." Atkinson, 479 F.3d at 229, 231 (finding that IIRIRA's repeal

of Section 212(c) relief was impermissibly retroactive as applied to aliens who were not offered

plea agreements and went to trial, even though those aliens did not rely on Section 212(c) relief

in deciding to go to trial, because the trial and conviction were in the past and could not be

undone and because the answer was yes to "the relevant question . . . whether IIRIRA attached

new legal consequences to those aliens' convictions and resulting sentences"); see Hem, 458

F.3d at 1198-99 (stating that the Fernandez-Vargas Court "never converts 'detrimental reliance'

on prior law into a prerequisite for sustaining a retroactivity claim"); but see de Anderson v.

Gonzales, 497 F.3d 927, 938-39, 941 (9th Cir. 2007) (noting the circuit split on whether reliance

is a requirement for retroactivity, disapproving the Third Circuit's approach, and holding that

"aliens claiming that IIRIRA's repeal of relief from deportation is impermissibly retroactive as

applied to them must demonstrate [objectively] reasonable reliance on pre-IIRIRA law");

17

Saravia-Paguada v. Gonzales, 488 F.3d 1122, 1134 (9th Cir. 2007) (concluding that Fernandez-Vargas reinforces the Ninth Circuit's position that "an alien must demonstrate some affirmative reliance on a previously available immigration benefit to show impermissible retroactivity").

Given the facts of this case, this court need not address the issue of reliance. Charleswell has failed to demonstrate that prior to IIRIRA's enactment he attempted to procure or avail himself of the relief denied to him by § 241(a)(5), and that he was eligible for such relief, as required by Fernandez-Vargas.

### a.    Charleswell Did Not Avail Himself of the Relief Denied by § 241(a)(5).

The applicable time frame is the period between Charleswell's unlawful reentry to the United States following his July 9, 1992 deportation, which reentry was before March 20, 1997 when he was again found in the United States, and the new reinstatement provision's effective date of April 1, 1997.  Upon representations by the Government, Charleswell made several applications between 1992 and 1997, but not for the relief denied to him by § 241(a)(5), i.e., cancellation of removal, adjustment of status, and voluntary departure.[10]

Although Charleswell argues in conclusory fashion that he availed himself of the relief denied to him by § 241(a)(5), he fails to present any detail or evidence of how he availed himself

---

[10] Specifically, the Government represents the following facts, which Charleswell does not contest. On October 20, 1995, after being deported to Tortola, British Virgin Islands, Charleswell filed an application for permission to apply for admission to the United States after deportation, which was denied. (Gov't Proposed Findings of Fact & Mem. of Law 9; see Mots. Hr'g Tr. 68, 73-75, May 9, 2007.)  On October 23, 1995, he applied for an application for waiver of grounds of excludability, which was denied. (Id.)  On November 10, 1995, Charleswell appealed the earlier decision denying the application for permission to apply, which was rejected. (Id.)  Charleswell apparently filed these applications while already in St. Thomas, U.S. Virgin Islands. (Mots. Hr'g Tr. 73-75.)

of any such relief. (Def.'s Proposed Findings of Fact & Mem. of Law 5.) Absent evidence that Charleswell made applications for the relief denied to him by § 241(a)(5) prior to its effective date, the court cannot conclude that he falls under the narrow exception carved out in <u>Fernandez-Vargas</u>. Instead, Charleswell's conduct is no different from that of Fernandez-Vargas, in that he unlawfully reentered the United States and chose to continue his illegal presence through the effective date of IIRIRA, despite warning of the change in the law. <u>See Fernandez-Vargas</u>, 126 S. Ct. at 2431.

 

**b.      Charleswell Was Not Eligible for the Relief Denied by § 241(a)(5).**

Not only does Charleswell fail to present evidence that he had made any relevant applications prior to IIRIRA's effective date, he cannot substantiate that he would have been eligible for the relief denied to him by § 241(a)(5).

Neither party informs whether Charleswell was eligible for adjustment of status, and the court will not attempt to address that as a form of relief.[11]

The Government argues that Charleswell was not eligible for cancellation of removal, 8

---

[11] The Government argues that Charleswell was ineligible to apply for a waiver of deportation under former Section 212(c) of the INA, 8 U.S.C. § 1182(c) (repealed by IIRIRA). (<u>See</u> Gov't Reply to Def.'s Proposed Findings of Fact & Mem. of Law 1-2.) The Third Circuit has held that "if an alien's conviction occurred before the repeal of section 212(c) and he is at that time otherwise eligible for relief, he retains that eligibility despite the repeal . . . [, but] if the underlying conviction occurs after the repeal, there has been not retroactive effect and section 212(c) relief is not available." <u>Cespedes-Aquino v. AG of the United States</u>, 498 F.3d 221, 225 (3d Cir. 2007). As the Government correctly argues, Charleswell was convicted of Possession of a Firearm by a Convicted Felon on August 29, 1997, after the repeal of Section 212(c), and is therefore ineligible to claim a benefit under Section 212(c). This argument, however, is beyond the scope of the <u>Fernandez-Vargas</u> inquiry, which concerns attempts to obtain the relief denied by § 241(a)(5) prior to IIRIRA's effective date.

U.S.C. § 1229b, or voluntary departure, 8 U.S.C. § 1229c, prior to IIRIRA's effective date because he previously had been convicted of an aggravated felony, having been convicted of controlled substances offenses.  At the time, cancellation of removal and voluntary departure were not forms of relief available to aliens convicted of an aggravated felony.  8 U.S.C. §§ 1229b(a)(3), b(1)(c) (1990) (cancellation of removal); 8 U.S.C. § 1254(e)(2) (1991) (repealed by IIRIRA) (voluntary departure).  Charleswell argues that he was entitled to such discretionary relief, despite his conviction.  (Def.'s Proposed Findings of Fact & Mem. of Law 6.)  Without attempted explanation, he nevertheless argues that he was not convicted of an aggravated felony under Maryland law, and that Maryland's criminal code elements do not parallel the essential elements for comparable offenses at the federal level.  (Id.)  These arguments cannot prevail.

The INA's definition of the term "aggravated felony" includes "illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section 924(c) of title 18)."  8 U.S.C. 1101(a)(43)(B); see Lopez v. Gonzales, 127 S. Ct. 625, 627-28 (2006).  Although the INA leaves "illicit trafficking" undefined, Section 924(c) of Title 18 defines the subcategory of "drug trafficking crime" as "any felony punishable under the Controlled Substances Act."  See Lopez, 127 S. Ct. at 628.  The Supreme Court has held that "a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law."  Id. at 633 (holding that a state felony conviction for a drug offense that is treated as a misdemeanor under the Controlled Substances Act does not constitute an "aggravated felony" under the INA).

The court takes judicial notice of Charleswell's convictions prior to IIRIRA's effective date.  (See also Mots. Hr'g Tr. 50:19-22, 51:2-11, 52-54, 89-90, May 9, 2007.)  On May 17,

20

1989, Charleswell pled guilty to the charge of Possession of Marijuana stemming from a February 21, 1987 arrest and was sentenced to 60 days in Bergen County Jail before the Superior Court of Bergen County, New Jersey.  On May 5, 1987, Charleswell pled guilty to the charge of Possession of Marijuana with Intent to Distribute stemming from a January 9, 1986 arrest and was sentenced to 60 days in Bergen County Jail and three years probation before the Superior Court of Bergen County, New Jersey.  At the time, this was a felony conviction.  See Md. Code 1957, Art. 27, § 286; cf. Md. CRIMINAL LAW §§ 5-602, 5-607 (2006) (current version).  On January 6, 1987, Charleswell pled guilty to the charge of Possession with Intent to Manufacture-Distribute Marijuana stemming from an August 28, 1986 arrest and was sentenced to one year imprisonment and probation for one year and four months before the Circuit Court of Baltimore City, Maryland.

Regardless of whether Charleswell's convictions were felonies or misdemeanors under state law, his two convictions for possession of marijuana with intent to distribute were for conduct punishable as felonies under the Controlled Substances Act.  See 21 U.S.C. § 841(a)(1) (prohibiting "any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance").  His convictions, therefore, were for aggravated felonies under the INA, making him ineligible for cancellation of removal and voluntary departure prior to IIRIRA's effective date.  Because Charleswell was not eligible to apply for relief denied to him by § 241(a)(5) prior to IIRIRA's effective date, such rights could not have vested before IIRIRA's effective date.  See Rosa v. Gonzales, 490 F.3d 403, 407-08 (5th Cir. 2007).

Because Charleswell has failed to demonstrate a vested right or a past act to which a new

21

disability could attach, retroactive application of § 241(a)(5) is permissible.  See Fernandez-Vargas, 126 S. Ct. at 2431-34.  Having failed to establish impermissible retroactivity, Charleswell cannot show prejudice.  There is no reasonable probability that Charleswell would have obtained relief had he been granted an opportunity to argue that the new reinstatement provision, § 241(a)(5), was impermissibly retroactive as applied to him.  See Charleswell, 456 F.3d at 362.  Absent a showing of prejudice, Charleswell cannot demonstrate fundamental unfairness under 8 U.S.C. § 1326(d)(3).  See id. at 363.  Charleswell thus fails to meet the requirements of § 1326(d) and may not collaterally attack the 2001 Reinstatement order.  See id. Because Charleswell cannot attack the 2001 Reinstatement, and the Third Circuit has found he cannot collaterally attack the 1991 Deportation order, the judgment entered November 19, 2004, for the criminal conviction of reentering the United States without permission, after having been previously deported, must be reinstated.

### IV.  Conclusion

An appropriate Order follows.